**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | : | |
| EMILY DOE, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:17-CV-1894 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ENFIELD BOARD OF EDUCATION, et al., | : | JUNE 6, 2018 |
| Defendants. | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 13)**

## I.    INTRODUCTION

The plaintiff, Emily Doe, by and through her parents and next friends, Jane and

John Doe, filed a Complaint on November 10, 2017.  See Complaint ("Compl.") (Doc.

No. 1).  In it, Doe brings five claims against the Enfield Board of Education and

individual defendants Superintendent Jeffrey Schumann, Principal Andrew Longey, and

Vice Principal Connel Clark in their individual and official capacities.  See id.  Doe's

claims include violation of the Due Process Clause of the Fourteenth Amendment

(Counts One and Two), negligence (Count Three), negligent supervision (Count Four),

and negligent infliction of emotional distress (Count Five).  See id.  The defendants filed

a Motion to Dismiss Counts One and Two and/or Motion for Judgment on the Pleadings

on February 27, 2018.  See Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 13).

For the reasons stated below, the defendants' Motion to Dismiss is **GRANTED**,

and Counts One and Two of the Complaint are **DISMISSED**.

## II. FACTS

The Complaint alleges the following facts.[1]  At the time of the events that are the subject of the Complaint, Emily Doe was a 14-year-old student at Enfield High School. See Compl. at ¶ 9.  She had special education needs due to her mental disabilities, including a diagnosis or history of Attention Deficit Disorder, Anxiety Disorder, Autism Spectrum Disorder, and Mixed Expressive and Receptive Language Disorder.  See Compl. at ¶ 10.  Student A was another student at Enfield High School, who was committed to the Department of Children and Families ("DCF") and who the Complaint alleges had a history of aggressive behavior and a propensity for sexual violence about which the defendants knew or should have known.  See id. at ¶¶ 13–14.

On November 11, 2015, Student A called Doe at home and told her that he wanted to take her virginity.  See id. at ¶ 17.  He asked her if he could do it the next day, and Doe said no.  See id.  The next day at school, in a public location that was observed or observable by the defendants, Student A told Doe to follow him.  See id. at ¶ 19.  Although she did not want to, Doe followed him, and he led her to a hallway in the school's basement that was undergoing construction.  See id. at ¶ 23.

The Complaint alleges that the defendants and their agents failed to block access to the area under construction or otherwise ensure that the hallway did not become a dangerous location that could be used by students for acts of misconduct. See id. at ¶ 21.  The Complaint further alleges that the defendants and their agents

---

[1] The court accepts all factual allegations in the Complaint as true for the purposes of a motion to dismiss.  See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

observed or should have observed that Student A brought Doe to an unsafe location where she was not scheduled to be at that time. See id. at ¶ 23.

Student A then dragged Doe into the boys' bathroom and raped her in one of the stalls. See id. at ¶¶ 24–25. The Complaint alleges that Vice Principal Clark was or should have been in the proximity where this occurred, but failed to timely respond. See id. at ¶¶ 25–26. Vice Principal Clark opened the door to the bathroom after the assault had occurred and asked who was in the boys' bathroom. See id. at ¶¶ 28–29. Doe wanted to yell out, but felt threatened by Student A not to tell Vice Principal Clark what was happening. See id. at ¶ 29. Doe exited the stall and, when Vice Principal Clark asked why she was there, she answered that she had to use the bathroom and must have walked into the wrong one. See id. at ¶¶ 30–31. Vice Principal Clark then sent her back to class. See id. at ¶ 31.

Doe told two friends what had happened when she returned to class, and she was called to Principal Longey's office. See id. at ¶¶ 32–33. She told Vice Principal Clark and Principal Longey about the sexual assault. See id. at ¶ 33. Administrators then contacted the police, and Doe was brought by her mother to Connecticut Children's Medical Center for sexual assault evaluation. See id. at ¶ 34. The construction area in the basement was closed off from student access starting November 24, 2015. See id. at ¶ 35.

A report was filed anonymously with DCF, alleging inadequate supervision at the school. See id. at ¶ 36. DCF conducted an investigation, but closed the matter without findings of neglect, stating that Principal Longey and Vice Principal Clark addressed the situation swiftly after the incident. See id. at ¶ 38. The Complaint alleges, however,

that DCF did not conduct a thorough investigation.  <u>See</u> <u>id.</u>  The Complaint further

alleges that Doe suffered severe emotional distress as a result of the incident.  <u>See</u> <u>id.</u>

## III.  LEGAL STANDARD[2]

Federal Rule of Civil Procedure 8(a) requires a complaint to plead "a short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

Proc. 8(a).  Under Rule 12(b)(6), to survive a motion to dismiss for failure to state a

claim, that plain statement must allege facts sufficient to state a plausible claim for

relief.  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft</u>

<u>v. Iqbal</u>, 556 U.S. 662, 678 (2009).  While this plausibility standard does not require

probability, it is not satisfied by "a sheer possibility that a defendant has acted

unlawfully" or by allegations that are "merely consistent with a defendant's liability."  <u>Id.</u>

(internal quotation marks omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all

material factual allegations of the complaint as true and draw all reasonable inferences

in favor of the plaintiff.  <u>See</u> <u>Hemi Grp., LLC v. City of New York</u>, 559 U.S. 1, 5 (2010);

<u>Jaghory v. N.Y. State Dep't Educ.</u>, 131 F.3d 326, 329 (2d Cir. 1997).  However, the

court is not required to accept as true a "legal conclusion couched as a factual

allegation."  <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).  In those instances,

---

[2] Although the Motion is titled Motion to Dismiss and/or Motion for Judgment on the Pleadings, the court addresses the Motion as a Motion to Dismiss because no Answer has been filed, and the pleadings have not closed.  The court notes, however, that the standard of review for a motion for judgment on the pleadings is the same as that for a motion to dismiss.  <u>See</u> <u>Willey v. Kirkpatrick</u>, 801 F.3d 51, 61–62 (2d Cir. 2015).  Therefore, the outcome would be the same if the Motion were treated as a Motion for Judgment on the Pleadings under Rule 12(c).

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  The court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice should be taken." Samuels v. Air Trans. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## IV.  DISCUSSION

Count One of the Complaint alleges that defendants Superintendent Schumann, Principal Longey, and Vice Principal Clark violated Doe's rights under the Due Process Clause by failing to protect her from sexual assault by Student A.  See Compl. at ¶¶ 41–57.  Count Two alleges that the Enfield Board of Education[3] violated Doe's rights under the Due Process Clause by failing to train and supervise its employees and thereby adopting a custom or policy of not addressing safety concerns related to construction within the building and sexual assault amongst students.  See id. at ¶¶ 58–67.  Counts Three, Four, and Five are not addressed by the Motion to Dismiss.

The defendants argue that Counts One and Two should be dismissed because the Due Process Clause does not require the defendants to affirmatively protect Doe from assault unless Doe had a special relationship with the state or the state assisted in creating the danger to Doe.  See Memorandum in Support of Motion to Dismiss ("Mem. in Supp.") (Doc. No. 13-1) at 9–10.  The defendants argue that neither is the case here because there is no special relationship based on compulsory school attendance and a

---

[3] The court notes that the heading to Count Two states that it is against the Torrington Board of Education.  See Compl. at 10.  Because the Complaint names the Enfield Board of Education as a defendant, not the Torrington Board of Education, the court assumes that this is a misstatement and that the plaintiff intended to assert the claim against the Enfield Board of Education.

failure to intervene does not constitute an affirmative act in creating the danger. See id. at 10–12. The defendants additionally argue that, even if they were required to protect Doe, their actions or inactions did not rise to the level of egregious and outrageous conduct necessary to sustain a substantive due process claim. See id. at 12–14. Finally, the defendants argue that Count Two against the Enfield Board of Education should be dismissed because Doe has not alleged facts supporting a custom or policy sufficient to establish municipal liability under the Monell doctrine. See id. at 14–15.

A.    Fourteenth Amendment Due Process Claim (Count One)

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Among the liberties protected by the Due Process Clause of the Fourteenth Amendment is 'a right to be free from . . . unjustified intrusions on personal security.'" Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008) (quoting Ingraham v. Wright, 430 U.S. 651, 673 (1977)). Doe here alleges that this includes the right to be free from sexual abuse. See Compl. at ¶¶ 56, 66. The defendants do not dispute that such a right is included within the substantive protections of the Due Process Clause. See Mem. in Supp. at 9.

However, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). Thus, the Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Id. at 196. "[A] State's

6

failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197.

Interpreting DeShaney, the Second Circuit has recognized two exceptions to this rule. See Matican, 524 F.3d at 155. "First, the state or its agents may owe a constitutional obligation to the victim of private violence if the state had a 'special relationship' with the victim." Id. (citing Ying Jing Gan v. City of New York, 996 F.2d 522, 533 (2d Cir. 1993)). "Second, the state may owe such an obligation if its agents 'in some way had assisted in creating or increasing the danger to the victim.'" Id. (quoting Dwares v. City of New York, 985 F.2d 94, 98–99 (2d Cir.1993), overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993)).

In addition to alleging facts sufficient to satisfy one of the two above exceptions, in order to state a due process claim, the plaintiff must also allege facts to plausibly show that the defendants' behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998)).

1.      Special Relationship

A special relationship exists "when the State takes a person into its custody and holds him there against his will." Deshaney, 489 U.S. at 199–200. In such circumstances, "the Constitution imposes upon [the state] a corresponding duty to assume some responsibility for his safety and general well-being." Id. The Second Circuit has likewise "focused on involuntary custody as the linchpin of any special relationship exception." Matican, 524 F.3d at 156; see also Lombardi v. Whitman, 485 F.3d 73, 79 n.3 (2d Cir. 2007) ("Special relationships arise ordinarily if a government

actor has assumed an obligation to protect an individual by restricting the individual's freedom in some manner, as by imprisonment.").  Following this reasoning, the Second Circuit has recognized a special relationship in instances where the plaintiff is incarcerated, involuntarily institutionalized, or in foster care.  See, e.g., Youngberg v. Romeo, 457 U.S. 307, 315–16 (1982); Lombardi, 485 F.3d at 79 n.3; Doe v. N.Y.C. Dep't of Soc. Servs., 649 F.2d 134, 141 (2d Cir. 1981).

The Second Circuit has not yet had occasion to address whether a special relationship exists as a result of compulsory school attendance.  See Doe v. Torrington Bd. of Educ., 179 F. Supp. 3d 179, 190 (D. Conn. 2016), reconsideration granted in part on other grounds, No. 3: 15-CV-00452 (MPS), 2016 WL 6821061 (D. Conn. Nov. 17, 2016); T.K. v. New York City Dep't of Educ., 779 F. Supp. 2d 289, 307 (E.D.N.Y. 2011).  However, a number of courts within this district have held that no special relationship exists in such circumstances.  See Doe v. Torrington, 179 F. Supp. 3d at 190; Gagnon ex rel. MacFarlane v. E. Haven Bd. of Educ., 29 F. Supp. 3d 79, 83–84 (D. Conn. 2014); Risica ex rel. Risica v. Dumas, 466 F. Supp. 2d 434, 439 (D. Conn. 2006); Crispim v. Athanson, 275 F. Supp. 2d 240, 246–47 (D. Conn. 2003).

The Crispim court distinguished the relationship between a school and a student from that of a prison and an inmate or a mental institution and an involuntarily admitted patient because "it is up to the parents of compulsory-school-age children to decide whether education will take place in the home, or in public or private school."  Crispim, 275 F. Supp. 2d at 247.  Thus, "the primary caretakers of compulsory-school-age children remain their parents, irrespective of the fact that the children are present in school at particular times of the day throughout the school year."  Id.  This "restriction of

8

freedom does not prevent the students from providing for their basic needs" in the way that incarceration or involuntary institutionalization does. Id.

Other districts in this Circuit considering this question have reached the same conclusion, see, e.g., P.W. v. Fairport Cent. Sch. Dist., 927 F. Supp. 2d 76, 81–82 (W.D.N.Y. 2013); HB v. Monroe Woodbury Cent. Sch. Dist., No. 11-CV-5881 CS, 2012 WL 4477552, at *10 (S.D.N.Y. Sept. 27, 2012), as have a number of other Circuits that have addressed the issue, see, e.g., Hasenfus v. LaJeunesse, 175 F.3d 68, 71–72 (1st Cir. 1999); Wyke v. Polk Cnty. Sch. Bd., 129 F.3d 560, 569 (11th Cir. 1997); Doe v. Claiborne County, 103 F.3d 495, 510 (6th Cir. 1996); Graham v. Indp. Sch. Dist. No. I–89, 22 F.3d 991, 994 (10th Cir. 1994); Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 732 (8th Cir. 1993); D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1371–73 (3d Cir. 1992); J.O. v. Alton Cmty. Unit Sch. Dist. 11, 909 F.2d 267, 272–73 (7th Cir. 1990).

A small number of cases within this Circuit have recognized, to the contrary, that school officials may owe "some duty" to students when attendance is compulsory and truancy laws are in place. See Pagano by Pagano v. Massapequa Pub. Sch., 714 F. Supp. 641, 643 (E.D.N.Y. 1989) ("We consider elementary school students who are required to attend school, the truancy laws still being in effect, to be owed some duty of care by defendants which may or may not rise to the level required in the above-mentioned circumstances."); Lichtler v. Cty. of Orange, 813 F. Supp. 1054, 1056 (S.D.N.Y. 1993) ("A state imposing compulsory attendance upon school children must take reasonable steps to protect those required to attend from foreseeable risks of personal injury or death."). However, these two cases have not been widely followed

and have been expressly rejected by some subsequent cases. See Crispim, 275 F. Supp. 2d at 247 (disagreeing with Pagano and Lichtler "based on the restrictive language of DeShaney and its progeny, namely Dwares and D.R."); HB v. Monroe Woodbury, 2012 WL 4477552, at *10 (finding Pagano unpersuasive because it "did not address the issue in depth, was decided over twenty years ago, and has since been distinguished by several other courts based in part on subsequent authority"); Reid ex rel. Roz B. v. Freeport Pub. Sch. Dist., 89 F. Supp. 3d 450, 457–58 (E.D.N.Y. 2015).

While the court notes that the Second Circuit has not addressed this issue and could reasonably reach the outcome in Pagano and Lichtler, the Circuit has given no indication that it would do so. In the absence of Second Circuit guidance, the court sees no reason to deviate from the vast majority of precedent, both of courts in this Circuit and other Courts of Appeals. Thus, the court holds that the defendants here did not owe Doe an affirmative duty to prevent Student A from infringing on her right to be free from sexual assault merely by virtue of her compulsory school attendance.

Doe further argues that, even if compulsory school attendance is insufficient to establish a special relationship on its own, it may do so in combination with other factors, namely Doe's particular vulnerability to victimization due to her mental disabilities. See Memorandum in Opposition to Motion to Dismiss ("Mem. in Opp.") (Doc. No. 21) at 12–13. To support her argument, Doe cites only one case from the Southern District of Texas. See Teague ex rel. C.R.T. v. Texas City Indep. Sch. Dist., 348 F. Supp. 2d 785, 792–93 (S.D. Tex. 2004), vacated in part, 386 F. Supp. 3d 893 (S.D. Tex. 2005), aff'd sub nom. Teague v. Texas City Indep. Sch. Dist., 185 Fed. App'x 355 (5th Cir. 2006). In Teague, the district court distinguished special needs students

from typical high school students, holding that "mentally disabled students who attend public school under Texas's compulsory attendance laws, in specially designed and segregated special education classes, are involuntarily confined and thus enjoy a special relationship with their school district." Id. at 793.

This court, however, declines to follow Teague. The court first notes that Teague is not binding on this court and is, therefore, only valuable precedent to the extent the court finds it persuasive. The persuasive value of Teague, however, has been weakened by subsequent history and undermined by later case law. The Teague court denied the motion to dismiss the complaint for the reasons quoted above, see id. at 793, but the court later granted summary judgment for the defendant because the facts after discovery did not support a due process claim. See Teague ex rel. C.R.T. v. Texas City Indep. Sch. Dist., 386 F. Supp. 2d 893, 895–96 (S.D. Tex. 2005), aff'd sub nom. Teague v. Texas City Indep. Sch. Dist., 185 Fed. App'x 355 (5th Cir. 2006). "While the Court believes that, in some circumstances, a special relationship may exist between a school district and a special education student, these circumstances do not rise to that level." Id. Specifically, the Teague court reasoned:

> The Fifth Circuit held that a special relationship did not exist between a school district and a thirteen-year-old student who was raped by the janitor. See Doe v. Hillsboro Indep. Sch. Dist., 113 F.3d 1412, 1415 (5th Cir. 1997). Therefore, to the extent that age reflects maturity and judgment, the age of thirteen—whether functional or chronological—is not enough under Fifth Circuit precedent to create a special relationship, even in conjunction with compulsory attendance laws.

Id. at 896 n.1. Based on this language, at least one district court in Texas has indicated that a special relationship cannot be proved without specific allegations of the plaintiff's chronological age, functional age, or IQ. See Goad v. Lanier, No. CIV.A. H-06-0718,

2006 WL 1698014, at *5–*6 (S.D. Tex. June 16, 2006). In this case, Doe was 14 years old at the time of the incident, and the Complaint includes no allegations of her functional age as a result of her disabilities.

The persuasive authority of Teague is further weakened by its treatment by other courts in the Fifth Circuit. See R.S. ex rel. Smith v. Starkville Sch. Dist., No. 1:12-CV-00088-SA-DAS, 2013 WL 5295685, at *4 n.1 (N.D. Miss. Sept. 19, 2013) (noting that the Teague court "did not explain the circumstances in which a special relationship might exist between a school district and a special education student" and declining "to extend the exception based solely on dicta from another district court"); C.L. ex rel. R.L. v. Leander Indep. Sch. Dist., No. A-12-CA-589 LY, 2013 WL 2452724, at *4 (W.D. Tex. June 4, 2013), opinion withdrawn and superseded in part on other grounds, No. A-12-CA-589 LY, 2013 WL 3822100 (W.D. Tex. July 23, 2013) (stating that Teague is no longer good law after Doe v. Covington, 675 F.3d 849 (5th Cir. 2012)).

Finally, contrary to Teague, a number of courts in this Circuit have found no special relationship between a school and a student, even where the student was disabled. See Doe v. Torrington, 179 F. Supp. 3d at 183, 91–92; Drain v. Freeport Union Free Sch. Dist., No. 14-CV-1959 SJF, 2015 WL 1014451, at *1 (E.D.N.Y. Mar. 9, 2015) (addressing a plaintiff whose disability is discussed in Drain v. Freeport Union Free Sch. Dist., No. CV 14-1959 SJF AKT, 2015 WL 1014413, at *1 (E.D.N.Y. Jan. 14, 2015), report and recommendation adopted in part, rejected in part, No. 14-CV-1959 SJF, 2015 WL 1014451 (E.D.N.Y. Mar. 9, 2015)); M. v. Stamford Bd. of Educ., No. 3:05-CV-0177 WWE, 2008 WL 2704704, at *6 (D. Conn. July 7, 2008), decision vacated in part on reconsideration on other grounds sub nom. M. ex rel. Mr. M. v. Stamford Bd.

12

of Educ., No. 3:05-CV-0177 (WWE), 2008 WL 4197047 (D. Conn. Sept. 9, 2008); Robertson ex rel. Robertson v. Arlington Cent. Sch. Dist., No. 99 CIV. 0675 BDP, 2000 WL 35948049, at *1, *5 (S.D.N.Y. Jan. 27, 2000), aff'd sub nom. Robertson v. Arlington Cent. Sch. Dist., 229 F.3d 1136 (2d Cir. 2000).  Doe v. Torrington, Drain, and Robertson reached this outcome without expressly discussing the special needs of the student. The court in M. v. Stamford, however, stated, "The fact that plaintiff M. may be mentally handicapped does not affect the applicable constitutional standards."  M. v. Stamford, 2008 WL 2704704, at *6 (citing Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 732 (8th Cir. 1993)).

Absent Second Circuit precedent indicating otherwise, this court declines to deviate from the other courts in the Circuit.  The court likewise holds that the defendants' knowledge of Doe's particular vulnerability due to her mental disabilities does not change the court's analysis of whether a special relationship exists.  This is consistent with language in DeShaney, which states, "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expression of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."  DeShaney, 489 U.S. at 200.

Accordingly, the court concludes that there was no special relationship between the defendants and Doe and, therefore, that Doe has not stated a due process claim based upon this theory.

### 2.    State-Created Danger

 The second exception under which the state owes an affirmative obligation to protect a victim from a private actor occurs when "the officers in some way had assisted in creating or increasing the danger to the victim."  Dwares v. City of New York, 985

F.2d 94, 99 (2d Cir. 1993). Determining whether the state has created the danger requires the court to distinguish "between conduct that is 'passive' as in DeShaney and that which is 'affirmative' as in Dwares." Pena v. DePrisco, 432 F.3d 98, 109 (2d Cir. 2005). The Second Circuit recognized that treading this "fine line" "can of course sometimes be difficult." Id. at 109–10. "'[T]he boundaries of the state created danger exception to DeShaney are not entirely clear,' but the exception does require a government defendant to 'either be a substantial cause of the danger . . . or at least enhance it in a material way.'" Scruggs v. Meriden Bd. of Educ., No. 3:03-CV-2224(PCD), 2007 WL 2318851, at *12 (D. Conn. Aug. 10, 2007) (quoting Clarke v. Sweeney, 312 F.Supp.2d 277, 293 (D. Conn. 2004)).

In drawing this boundary, "[a] failure to intervene when misconduct takes place, and no more, is not sufficient to amount to a state created danger." Pena, 432 F.3d at 110 (emphasis in original). Therefore, "'allegations that the [defendants] merely stood by and did nothing' are insufficient to state a constitutional violation." Id. (quoting Dwares, 985 F.2d at 99). Nor are allegations that the defendants merely had a "general knowledge of the danger." Reid, 89 F. Supp. 3d at 458. Rather, the plaintiff must allege "an affirmative act" on the part of the defendants. See Lombardi, 485 F.3d at 79.

The Second Circuit has recognized a state-created danger in instances in which "[t]he affirmative conduct of a government official . . . communicates, explicitly or implicitly, official sanction of private violence." Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 429 (2d Cir. 2009); see also Dwares, 985 F.2d at 99 (finding a state-created danger where police officers communicated to skinheads that "unless they got totally out of control they would not be impeded or arrested"). Thus, when

"state officials communicate to a private person that he or she will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct under <u>Dwares</u>." <u>Pena</u>, 432 F.3d at 111 (finding a state-created danger where police officers encouraged a colleague to drink excessively prior to driving, in part by participating in the drinking with him). For example, "repeated, sustained inaction by government officials, in the face of potential acts of violence, might constitute prior assurances, rising to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." <u>Okin</u>, 577 F.3d at 428 (citing <u>Pena</u>, 432 F.3d at 111).

Doe argues that the defendants engaged in a number of affirmative acts that created or increased the danger she faced from Student A. These acts include that: (1) the defendants knew or should have known and willfully ignored that "Student A had a history of misconduct that demonstrated a propensity toward violence, but failed to address the same" by putting any protections into place, <u>see</u> Compl. at ¶¶ 14–15, 50; (2) they knew or should have known and willfully ignored that Doe was "limited in her ability to defend herself against misconduct by her peers because of her disabilities, but failed to address the same," <u>see</u> <u>id.</u> at ¶ 47; (3) they "created a dangerous condition by disabling and or allowing the disabling of surveillance and monitoring devices in a naturally isolated area and where construction was occurring" and by failing to block access to that area, <u>see</u> <u>id.</u> at ¶¶ 21–22, 52; (4) they failed to respond to Student A's actions leading up to the assault, including bringing Doe to the basement where she was not supposed to be at the time, <u>see</u> <u>id.</u> at ¶ 23, 26–31; Mem. in Opp. at 8–9; (5)

they "implicitly communicat[ed] to Student A that he would not be punished or otherwise interfered with while engaging in misconduct that was foreseeable leading to the sexual assault," <u>see</u> Compl. at ¶ 51.

The court first addresses the conduct in acts (1) through (4) above. Although Doe claims to allege affirmative acts, <u>see</u> Compl. at ¶ 46; Mem. in Opp. at 10–11, these allegations are merely failures to prevent or intervene in the sexual assault and do not actually identify any affirmative conduct of the defendants. Even the third allegation, which is framed affirmatively as "creating a dangerous condition," is merely a failure to block or monitor the area. Doe's rephrasing of a failure to act in affirmative terms does not alter the court's analysis. <u>See</u> Drain, 2015 WL 1014413, at *11 ("Notwithstanding Plaintiffs' attempts at framing the actions of Assistant Principal Mille and School Safety Officer Beckett as affirmative, non-passive conduct, the facts alleged do not rise to the level of active facilitation and encouragement of K.W. to inflict harm upon J.D. sufficient to state a viable claim of 'state created danger.'"). As such, these allegations are the kind of passive conduct that <u>DeShaney</u> and its progeny have held do not state a claim for relief under the state-created danger exception.

Courts in this Circuit have considered similar instances of a school's failure to act in the face of bullying and student-on-student violence and held that such cases are not sufficient to satisfy the state-created danger exception. <u>See</u> <u>Gagnon</u>, 29 F. Supp. 3d at 84; <u>P.W. v. Fairport</u>, 927 F. Supp. 2d at 83–84 ("The failure to respond to any particular incident or the failure to adequately discipline a student in a manner that would prevent future bullying is insufficient to state a claim for a violation of due process based on a state created danger, absent an indication that school officials in some way

communicated an official sanction of the bullying."); H.B. v. Monroe Woodbury, 2012 WL 4477552, at *11; Campbell v. Brentwood Union Free Sch. Dist., 904 F. Supp. 2d 275, 281 (E.D.N.Y. 2012); Chambers v. N. Rockland Cent. Sch. Dist., 815 F. Supp. 2d 753, 765–68 (S.D.N.Y. 2011); Scruggs, 2007 WL 2318851, at *12 ("[I]n the context of school bullying and harassment, courts have held that schools have no duty under the due process clause to protect students from assaults by other students, even where the school knew or should have known of the danger presented."); Risica, 466 F. Supp. 2d at 439–40.[4]  Indeed, Doe's case is even weaker than many of these cases because Doe points to no prior instances of misconduct reported to the school that the school failed to respond to or act upon.

In contrast, the conduct in allegation (5) above—that the defendants implicitly communicated to Student A that he would not be punished or interfered with in his misconduct—would constitute an affirmative act if sufficiently pled.  However, the Complaint contains only a conclusory statement reciting the standard in Pena and does not provide any factual allegations indicating that the defendants implicitly communicated this to Student A.  As such, a legal conclusion is not entitled to the same presumption of truth given to factual allegations when considering a motion to dismiss. See Papasan v. Allain, 478 U.S. 265, 286 (1986).  Indeed, the only factual allegations on which Doe could rely in asserting an implicit official sanction are the same failures to intervene already determined above to be insufficient to state a claim based on a state-

---

[4] Doe attempts to distinguish the cases cited by the defendants as cases decided at the summary judgment stage rather than at the motion to dismiss stage.  See Mem. in Opp. at 10.  Although the evidentiary burden that must be met differs at these two stages, however, the legal standard for what constitutes conduct amounting to a state-created danger does not.  Additionally, a number of the above cases were decided on a motion to dismiss.  See Gagnon, 29 F. Supp. 3d at 84; P.W. v. Fairport, 927 F. Supp. 2d at 83; H.B. v. Monroe Woodbury, 2012 WL 4477552, at *10; Campbell, 904 F. Supp. 2d at 280.

created danger. The Second Circuit has indicated that, in contrast to the special relationship exception, which relies on the relationship between the state and the victim, the state-created danger exception "arises from the relationship between the state and the private assailant." Pena, 432 F.3d at 109; see also Lombardi, 485 F.3d at 80 (defining a state-created danger "through some interaction or relationship with the wrongdoer"). Here, the Complaint alleges no interactions or relationships between any of the defendants and Student A.

The absence of an implicit communication of official sanction in this case is made further apparent by comparison to cases in which the Second Circuit has found such a communication to exist. In Dwares, the police expressly told skinheads that they would not prevent or interfere with the skinheads' attack on protesters. See Dwares, 985 F.2d at 99. In Hemphill v. Schott, the police officers gave a handgun to a robbery victim and drove the victim to the scene of the robber's arrest, where the victim then shot the robber. See Hemphill v. Schott, 141 F.3d 412, 419 (2d Cir.1998). In Okin, police officers responded to the prior complaints of domestic violence, not only by failing to intervene, but also by "openly express[ing] camaraderie with [the attacker] and contempt for [the victim]." Okin, 577 F.3d at 430. Finally, in Pena, police officers encouraged their colleague to drink excessively prior to driving, in part by participating in the drinking with him. See Pena, 432 F.3d at 110–11. The case before this court differs from these cases because, here, there are no allegations of anything "similar to the direct contact between the law enforcement officials and the miscreants in Pena and Okin."[5] See Gantt v. Ferrara, No. 15-CV-7661 (KMK), 2017 WL 1192889, at *12

_____

[5] Doe further relies on Doe v. Torrington, which found upon reconsideration that the plaintiff had stated a claim based on state-created danger against one defendant. See Doe v. Torrington Bd. of

(S.D.N.Y. Mar. 29, 2017). Doe has alleged no facts from which an inference could be drawn that the defendants communicated to Student A an approval of his misconduct, either explicitly or implicitly. Neither has Doe alleged "repeated, sustained inaction" on the part of the defendants because the Complaint has not alleged that any acts of potential violence occurred prior to the assault on Doe to which the defendants could even have responded with inaction.

Therefore, Doe has not alleged facts sufficient to state a due process claim based on a state-created danger. As Doe has sufficiently alleged neither the special relationship exception nor the state-created danger exception, she has not stated a plausible claim for relief under the Due Process Clause, and Count One of the Complaint is dismissed without prejudice. Doe is granted leave to replead her due process claim under the state-created danger exception if she can allege facts plausibly supporting an inference that the defendants implicitly communicated to Student A that he would not be punished or interfered with.

### 3. Egregious and Outrageous

Even if Doe had alleged facts under either of the above exceptions, the court would still dismiss Count One for failure to allege facts that rise to the level of egregious and outrageous conduct required to state a substantive due process claim. In order to

---

Educ., No. 3: 15-CV-00452 (MPS), 2016 WL 6821061, at *3 (D. Conn. Nov. 17, 2016). That case, however, further reinforces the court's conclusion that no state-created danger is alleged here. In Doe v. Torrington, the plaintiff alleged on reconsideration that the coaches, including the defendant at issue, not only knew about and failed to prevent hazing between students, but that they encouraged the violence by being "verbally mean to the players—which . . . makes the players verbally mean to the lower classmen." See id. That Complaint also alleged that the coaches picked on a student for missing practice for a funeral and made the entire team run laps as a result, knowing that this would lead to the other students "ganging up" on that one student. See id. The court agrees that these are affirmative acts that encouraged the hazing. No similar acts are alleged here, however. Notably, the court in Doe v. Torrington only found a plausible claim against the one defendant coach, but not against any of the other defendants against whom no similar affirmative acts were alleged. See id.

state a due process claim, the plaintiff must allege facts indicating that the defendants' behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Matican, 524 F.3d at 155. "To shock the conscience, governmental conduct must be so extreme or outrageous that it can be viewed as 'brutal' and 'offensive to human dignity.'" Scruggs, 2007 WL 2318851, at *13 (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246 (2d Cir. 2001)). "In cases where courts have found such conduct, the facts were truly outrageous." Gagnon, 29 F. Supp. 3d at 84.

The court first notes that, when determining whether the conduct was egregious and outrageous, the object of the analysis is the defendants' conduct, not the conduct of the private actor inflicting the harm on the victim. See, e.g., Doe v. Torrington, 179 F. Supp. 3d at 191–92 (focusing on the defendants' behavior); Scruggs, 2007 WL 2318851, at *13 (focusing on the "Defendants' failure to fully remedy the bullying situation," rather than the actions of the bully). Undisputably, rape shocks the conscience. However, the question before the court is not whether Student A's rape of Doe was egregious and outrageous, but whether the defendants' failure to intervene and protect Doe was egregious and outrageous.

The facts alleged in the Complaint cannot plausibly support such an inference. The defendants' failure to block off or monitor the area under construction does not shock the conscience. Cf. Gagnon, 29 F. Supp. 3d at 84 (holding that the Board of Education's failure to have a guard at each entrance of the school does not shock the conscience). Nor does the defendants' failure to prevent the sexual assault or intervene while the assault was occurring. See Smith v. Guilford Bd. of Educ., 226 Fed. App'x 58,

62 (2d Cir.2007) ("Defendants' failure to respond to the harassing and bullying to which Jeremy was subjected . . . while highly unfortunate, does not rise to the level of egregious conduct . . . so brutal and offensive to human dignity as to shock the conscience." (internal quotation marks omitted)); <u>Doe v. Torrington</u>, 179 F. Supp. 3d at 191–92; <u>Scruggs</u>, 2007 WL 2318851, at *13; <u>P.W. v. Fairport</u>, 927 F. Supp. 2d at 84. For instance, it was not egregious and outrageous that Vice Principal Clark entered the bathroom after the assault had taken place rather than during the assault, nor was it egregious and outrageous that he sent Doe back to class after she told him that she had merely entered the wrong bathroom.  Doe has not alleged that Vice Principal Clark did these things knowing that Doe was being raped in the bathroom at the time.

Doe argues that the defendants' conduct was egregious and outrageous because they acted with deliberate indifference and recklessness.  <u>See</u> Mem. in Opp. at 15.  The circumstances under which deliberate indifference constitutes egregious and outrageous conduct are not fully defined.  <u>See</u> <u>Matican</u>, 524 F.3d at 158.  Intentional infliction of injury is "most likely to rise to the conscience-shocking level," while negligence "is categorically beneath the threshold of constitutional due process."  <u>Id.</u> (citations omitted).  The Second Circuit has also indicated that deliberate indifference does not shock the conscience "in the context of a time-sensitive emergency" or where the defendants are subject to the "pull of competing obligations."  <u>Id.</u> (citations omitted). However, the Second Circuit in <u>Pena</u> stated that deliberate indifference or recklessness may be sufficient to establish liability "because it requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk."  <u>Pena</u>, 432 F.3d at 114.

Even if deliberate indifference does state a due process claim, however, Doe has not alleged facts supporting an inference of deliberate indifference. The Complaint contains a conclusory statement that the defendants "intentionally, willfully, and/or recklessly" deprived Doe of her due process rights, but the court does not assume the truth of legal conclusions in determining a motion to dismiss, only of factual allegations. <u>See</u> Compl. at ¶ 56; <u>Papasan</u>, 478 U.S. at 286. Throughout the Complaint, Doe alleges only that the defendants "knew and/or should have known" about the risk of sexual assault. <u>See</u> Compl. at ¶¶ 14, 47, 50, 53, 54; <u>see also id.</u> at ¶¶ 18, 19, 23, 26 (alleging that Student A's actions prior to the assault were "observed and/or observable" and that defendants "were and/or should have been in the proximity of the location"). These allegations merely state a claim of negligence, and do not rise to the level of deliberate indifference, which is defined by <u>Pena</u> as alleging that "the defendant focused on the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk." <u>See Pena</u>, 432 F.3d at 114. Additionally, merely because the defendants knew or should have known about Student A's history of violence does not mean they had reason to know that he posed an immediate danger to the other students or a specific danger to Doe personally. <u>Cf.</u> <u>Scruggs</u>, 2007 WL 2318851, at *13 ("It is also unclear that Defendants had reason to believe that because J.W. assaulted Plaintiff the prior year, he posed an immediate danger to Daniel."). For example, the Complaint does not allege that any of the defendants was made aware of the phone call Student A made to Doe the night before the assault. <u>See</u> Compl. at ¶ 17. Therefore, the factual allegations in the Complaint do not allege that the defendants acted with deliberate indifference in failing to prevent the assault.

Accordingly, Doe has not stated a claim that the defendants' actions were egregious and outrageous. Count One is dismissed, in the alternative, on this ground. The court granted Doe leave to replead the claim under the state-created danger exception. Should she choose to do so, Doe must plead facts sufficient to plausibly support an inference that the defendants' actions were egregious and outrageous.

B.     Municipal Liability (Count Two)

Count Two alleges municipal liability against the Enfield Board of Education for the due process violation alleged in Count One. See Compl. at ¶¶ 58–67. Under section 1983, a municipality cannot be held liable under a theory of respondeat superior, but can be sued if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't Soc. Servs., 436 U.S. 658, 690–91 (1978). To bring a successful claim against a municipality, then, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

Here, because the court has held that Doe failed to state a claim that the individual defendants violated her constitutional rights, Doe has not alleged the second element of a Monell claim, i.e. a deprivation of a constitutional or statutory right. Accordingly, Count Two is dismissed without prejudice to Doe repleading Count One. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct."); see also Matican, 524 F.3d at 154 ("The first two claims depend on a single threshold question: did the

officers' actions violate Matican's constitutional rights?  If they did not, then the City cannot be liable to Matican under § 1983, regardless of whether the officers acted pursuant to a municipal policy or custom.").

Furthermore, however, even if Doe had stated a claim under Count One, the court would still dismiss Count Two for failure to allege facts sufficient to satisfy the fifth element of a Monell claim, i.e., "that an official policy of the municipality caused the constitutional injury."  See Roe, 542 F.3d at 36.  This fifth element can be satisfied by showing "(1) the existence of an official policy; (2) that an official with final policy-making authority took action or made a specific decision that caused the deprivation, or (3) the deprivation was caused by an unlawful practice amongst subordinate officials that was so widespread as to imply constructive acquiescence by policy-making officials." Rogers v. City of New Britain, 189 F. Supp. 3d 345, 358 (D. Conn. 2016).  In essence, the plaintiff must allege that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 404 (1997).

Doe does not argue that there was an official policy or that an official with final policy-making authority took action that caused the deprivation.  For example, the Complaint does not allege that Principal Longey or Vice Principal Clark are policymakers for the Enfield Board of Education, only that they implement the policies and are responsible for the welfare of the students.[6]  See Compl. at ¶¶ 4–5.  Rather, Doe argues, under the third approach, that the Enfield Board of Education had a

---

[6] The court finds it unnecessary to decide whether Doe has alleged that Superintendent Schumann is an official with final policymaking authority, see Compl. at ¶ 3, because Doe has not alleged any actions or decisions taken by Superintendent Schumann.

"custom or policy of not addressing and remedying safety concerns related to construction within the building, safety concerns related to the placement of a dangerous student in their population, and safety concerns regarding the vulnerabilities of special education students."  Compl. at ¶ 63.  Doe further argues that the Enfield Board of Education failed to properly train and supervise its employees.  See id. at ¶ 62.

A municipality has a policy or custom causing the constitutional injury when it is "faced with a pattern of misconduct and does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions."  Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).  To allege a policy or custom for failure to train or supervise, the plaintiff must allege that "the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need."  Id.  This requires the plaintiff to allege that: (1) "a policymaker knows to a moral certainty that [his] employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  Walker v. City of New York, 974 F.2d 293, 297–98 (2d Cir. 1992) (internal quotation marks omitted).

The Complaint has not alleged facts sufficient to state a claim either of a custom or of a failure to train or supervise.  The Complaint does not allege that there was any pattern of misconduct or history of employees mishandling the situation.  It alleges merely that Student A had a history of violent behavior about which the defendants

knew or should have known, see Compl. at ¶ 14, but it does not allege that Student A engaged in prior acts of violence while at Enfield High School or that the defendants or other school employees mishandled any prior acts of violence that did occur. Additionally, the Compliant does not identify any policymaker who knew to a moral certainty that the staff at Enfield High School would confront a situation of sexual assault. Nor does it allege that this situation would have been the sort of decision that training or supervision would have improved.

Furthermore, "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." Dwares, 985 F.2d at 100; see also Gantt, 2017 WL 1192889, at *7 ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality."). Here, the Complaint alleges at most one instance of misconduct, which occurred when Student A sexually assaulted Doe. Additionally, as noted above, the Complaint has not alleged that Principal Longey or Vice Principal Clark are policymakers for the Enfield Board of Education. See Compl. at ¶¶ 4–5. Thus, the Complaint's allegation of a single incident of potential misconduct is insufficient to establish a custom or policy of the Enfield Board of Education that caused a constitutional injury to Doe.

Accordingly, Count Two is dismissed without prejudice to replead.

C.    State Law Claims (Counts Three, Four, and Five)

Counts Three, Four, and Five raise state law claims of negligence, negligent supervision, and negligent infliction of emotional distress. See Compl. at ¶¶ 68–84. Because the court has dismissed Counts One and Two, the court declines to exercise

supplemental jurisdiction over these claims, pursuant to section 1367(c)(3) of title 28 of the United States Code.[7]  See 28 U.S.C. § 1367(c)(3) (2016).

Section 1367(c)(3) permits a district court to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  Id.  "Once the district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction."  Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation marks and citations omitted).  The Second Circuit has instructed that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims."  Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  In this case, the court has dismissed all of Doe's federal claims in Counts One and Two, and the balance of factors, including judicial economy, convenience, fairness, and comity, see id., point toward declining jurisdiction.  As the case is still in the early stages of litigation, significant judicial resources have not yet been expended in briefing and considering these state law claims, which are more appropriately decided by the state court.

Accordingly, Counts Three, Four, and Five are dismissed without prejudice to the plaintiff bringing the claims in this court if she repleads and states a claim under Count One or Count Two or, alternatively, in state court.

---

[7] The court notes that the defendants' Motion to Dismiss does not address Counts Three, Four, and Five of the Complaint.  The court, however, declines to exercise supplemental jurisdiction over these claims sua sponte.  See Doninger v. Niehoff, 594 F. Supp. 2d 211, 229 (D. Conn. 2009), aff'd in part, rev'd in part on other grounds, 642 F.3d 334 (2d Cir. 2011) (dismissing sua sponte state law claims because the court declined to exercise supplemental jurisdiction); Graves v. Goodnow Flow Ass'n, Inc., No. 8:16-CV-1546, 2017 WL 4326073, at *11 (N.D.N.Y. Sept. 27, 2017) (same).

## V.   CONCLUSION

For the reasons stated above, the Motion to Dismiss is **GRANTED**.  The

Complaint is dismissed without prejudice to replead.

**SO ORDERED.**

Dated at New Haven, Connecticut this 6th day of June, 2018.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge