UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EMILY DOE, by and through her PARENTS and NEXT FRIENDS, JANE and JOHN DOE, *Plaintiff,* | ) ) ) ) ) ) | CIVIL NO. 3:17-cv-1894 (KAD) |
| v. | ) ) ) | |
| ENFIELD BOARD OF EDUCATION, JEFFREY SCHUMANN, CONNEL CLARK, ANDREW LONGEY, *Defendants.* | ) ) ) ) | February 8, 2019 |

**MEMORANDUM OF DECISION RE:
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (ECF NO. 31)**

Kari A. Dooley, United States District Judge

**Statement of the Case**

This action arises out of an assault on the minor Plaintiff at Enfield High School. The assault occurred during the school day and was perpetrated by a fellow student. The Plaintiff, by and through her parents and next friends, Jane and John Doe, brought this action against the Enfield Board of Education, Superintendent Jeffrey Schumann, Principal Andrew Longey and Vice Principal Connel Clark. The individual Defendants are sued in both their individual and official capacities. The Plaintiff brings five claims against the Defendants, though only two of those claims are implicated in the instant Motion to Dismiss - the Fourteenth Amendment Substantive Due Process claims set forth in Counts One and Two. Previously, the Court (Hall, *J.*),[1] dismissed these claims pursuant to Fed. R. Civ. P. 12(b)(6), finding that the allegations did not meet the rigorous criteria for establishing a substantive due process claim. (ECF No. 25, Ruling Re: Motion to Dismiss ("Ruling") at 19, 23.) The Court permitted the Plaintiff to replead, however, if she

---
[1] This matter was re-assigned to the undersigned on September 20, 2018.

believed that there existed sufficient facts to state a plausible Fourteenth Amendment claim. (*Id.*) The Plaintiff filed an Amended Complaint on July 11, 2018. (ECF No. 29.) On August 9, 2018, the Defendants renewed their motion to dismiss on the grounds that the Amended Complaint does not cure the deficiencies identified by the Court in dismissing the original Complaint and because the Plaintiff has not set forth sufficient facts to plausibly state a Fourteenth Amendment Substantive Due Process claim under these circumstances. (ECF No. 31.) The Court heard oral argument on January 24, 2019. For the reasons that follow, the renewed motion to dismiss is GRANTED.

**Facts**

The Court sets forth below the facts alleged at the time the Court dismissed the original claims. They are taken directly from the Court's prior ruling.[2]

> At the time of the events that are the subject of the Complaint, Emily Doe was a 14-year-old student at Enfield High School. See Compl. at ¶ 9. She had special education needs due to her mental disabilities, including a diagnosis or history of Attention Deficit Disorder, Anxiety Disorder, Autism Spectrum Disorder, and Mixed Expressive and Receptive Language Disorder. See Compl. at ¶ 10. Student A was another student at Enfield High School, who was committed to the Department of Children and Families ("DCF") and who the Complaint alleges had a history of aggressive behavior and a propensity for sexual violence about which the defendants knew or should have known. See id. at ¶¶ 13–14.
>
> On November 11, 2015, Student A called Doe at home and told her that he wanted to take her virginity. See id. at ¶ 17. He asked her if he could do it the next day, and Doe said no. See id. The next day at school, in a public location that was observed or observable by the defendants, Student A told Doe to follow him. See id. at ¶ 19. Although she did not want to, Doe followed him, and he led her to a hallway in the school's basement that was undergoing construction. See id. at ¶ 23.
> The Complaint alleges that the defendants and their agents failed to block access to the area under construction or otherwise ensure that the hallway did not become a dangerous location that could be used by students for acts of misconduct. See id. at ¶ 21. The Complaint further alleges that the defendants and their agents observed or should have observed that Student A brought Doe to an unsafe location where she was not scheduled to be at that time. See id. at ¶ 23.
>
> Student A then dragged Doe into the boys' bathroom and raped her in one

---

[2] The Court accepted all factual allegations in the Complaint as true for purposes of the motion to dismiss. (Ruling, at 2, n.1.)

of the stalls. See id. at ¶¶ 24–25. The Complaint alleges that Vice Principal Clark was or should have been in the proximity where this occurred but failed to timely respond. See id. at ¶¶ 25–26. Vice Principal Clark opened the door to the bathroom after the assault had occurred and asked who was in the boys' bathroom. See id. at ¶¶ 28–29. Doe wanted to yell out but felt threatened by Student A not to tell Vice Principal Clark what was happening. See id. at ¶ 29. Doe exited the stall and, when Vice Principal Clark asked why she was there, she answered that she had to use the bathroom and must have walked into the wrong one. See id. at ¶¶ 30–31. Vice Principal Clark then sent her back to class. See id. at ¶ 31.

Doe told two friends what had happened when she returned to class, and she was called to Principal Longey's office. See id. at ¶¶ 32–33. She told Vice Principal Clark and Principal Longey about the sexual assault. See id. at ¶ 33. Administrators then contacted the police, and Doe was brought by her mother to Connecticut Children's Medical Center for sexual assault evaluation. See id. at ¶ 34. The construction area in the basement was closed off from student access starting November 24, 2015. See id. at ¶ 35.

A report was filed anonymously with DCF, alleging inadequate supervision at the school. See id. at ¶ 36. DCF conducted an investigation, but closed the matter without findings of neglect, stating that Principal Longey and Vice Principal Clark addressed the situation swiftly after the incident. See id. at ¶ 38. The Complaint alleges, however, that DCF did not conduct a thorough investigation. See id. The Complaint further alleges that Doe suffered severe emotional distress as a result of the incident. See id.

(Ruling at 2 – 4.)

In the Amended Complaint, the Plaintiff includes the following additional allegations regarding Emily Doe, Student A, and the conduct of the Defendants. As to Emily Doe, the Plaintiff alleges that at the time of the assault her functional age was approximately 11.2 years and her IQ was 80. With respect to Student A, the Plaintiff alleges, because he was "not a resident of Enfield, he was not entitled to attend Enfield Public Schools." The Plaintiff alleges that "Student A had a history of drug use and of dealing drugs, as well as a history of arrests for criminal conduct." As to the Defendants, the Plaintiff alleges that the Board "knowingly permitted Student A to attend Enfield High School." The Plaintiff further alleges that the Defendants allowed Student A to "remain in a general education setting, despite prior assaults and other criminal misconduct, without any restrictions or increased supervision." The Plaintiff alleges that the Defendants

3

"affirmatively removed protections required under Board and school policies, such as supervision of the school hallways and working security cameras, that were put in place to protect students from danger, including Student A's propensity for misconduct." The Plaintiff alleges that "[a]t the time of the attack, the Defendants had disabled the security cameras looking over the hallway outside the entrance to the aforementioned boys' bathroom." Finally, as to Clark specifically, the Plaintiff alleges that "[t]he area where Student A dragged Emily Doe into the boys' bathroom was part of Defendant Connel Clark's assigned hall duty area"; that Clark "had willfully abandoned the area by the boys' bathroom, and/or willfully ignored signs that Student A was bringing Emily to the isolated location"; that Clark, at the time of the attack, entered, exited, and then reentered the boys' bathroom, "observ[ing] the two students in the same stall" and "ask[ing] why Emily was in the boys' bathroom in a manner that suggested that she had engaged in misconduct"; and that Clark "failed to assess Emily's safety, and instead suggested she was to blame for being in the bathroom, despite that he knew or should have known that Student A had a history of misconduct, and despite that he knew or should have known that Emily was a vulnerable student." The Plaintiff alleges that "Clark created a danger in which Student A isolated the plaintiff and raped her." The Plaintiff further alleges that Clark subsequently "made contradictory statements about what he saw when in the boys' bathroom that morning."

**Discussion**

The Court does not reiterate the well-established standard for reviewing pleadings under Rule 8(a) as discussed in *Ashcroft v. Iqbal,* 5556 U.S. 662 (2009) and its progeny. Neither, with respect to the Fourteenth Amendment Due Process claim, does the Court reinvent the proverbial wheel. Judge Hall's decision thoroughly and accurately set forth the circumstances under which a state actor can be held liable for the violent conduct of a private actor.

4

> Fourteenth Amendment Due Process Claim (Count One)
>
> The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." Const. amend. XIV, § 1. "Among the liberties protected by the Due Process Clause of the Fourteenth Amendment is 'a right to be free from . . . unjustified intrusions on personal security.'" Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008)(quoting Ingraham v. Wright, 430 U.S. 651, 673 (1977)). Doe here alleges that this includes the right to be free from sexual abuse. See Compl. at ¶¶ 56, 66. The defendants do not dispute that such a right is included within the substantive protections of the Due Process Clause. See Mem. in Supp. at 9.
>
> However, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). Thus, the Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Id. at 196. "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197. Interpreting DeShaney, the Second Circuit has recognized two exceptions to this rule. See Matican, 524 F.3d at 155. "First, the state or its agents may owe a constitutional obligation to the victim of private violence if the state had a 'special relationship' with the victim." Id. (citing Ying Jing Gan v. City of New York, 996 F.2d 522, 533 (2d Cir. 1993)). "Second, the state may owe such an obligation if its agents 'in some way had assisted in creating or increasing the danger to the victim.'" Id. (quoting Dwares v. City of New York, 985 F.2d 94, 98–99 (2d Cir.1993), overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993)).
>
> In addition to alleging facts sufficient to satisfy one of the two above exceptions, in order to state a due process claim, the plaintiff must also allege facts to plausibly show that the defendants' behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998)).

(Ruling at 6 – 7.)

The Court first determined that the allegations did not support, as a matter of law, the type of "special relationship" required under the first *DeShaney* exception. (Ruling at 13.) Nonetheless, the Plaintiff raised this argument anew in her memorandum and at oral argument pressed this Court to find a "special relationship" arising out of the Plaintiff's unique vulnerabilities. However, this Court's review of the prior decision reveals that Judge Hall considered and rejected this argument

5

and did not grant the Plaintiff leave to replead with respect to this claim. (Ruling at 7 – 13.) Thus, the Court's prior decision on this issue is law of the case.

"Although we have described the 'law of the case [a]s an amorphous concept,' '[a]s most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Pepper v. United States*, 562 U.S. 476, 506–07 (2011) (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983)). Under the doctrine, courts should be loathe to revisit issues already decided absent cogent and compelling reasons. *Johnson v. Holder,* 564 F.3d 95, 99 (2d Cir. 2009). The purpose of the doctrine is to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Devilla v. Schriver,* 245 F. 3d 192, 197 (2d Cir. 2001). The doctrine has as much force with respect to the decisions of a coordinate court in the same case as to a court's own decisions. *Bank of America v. Pastorelly-Cuseo*, No. 3:17 – CV-01666 (SRU), 2017 WL 4678184, at *2 (D.Conn. Oct. 17, 2017). In other words, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atl. Airways, Ltd.*, v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting *Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir. 1964), *cert. denied,* 377 U.S. 934 (1964)).

However, while the doctrine "directs a court's discretion, it does not limit the tribunal's power." *Pepper*, 562 U.S. at 506-07. "Accordingly, the doctrine does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.' *Agostini v. Felton,* 521 U.S. 203, 236 (1997) (quoting *Arizona,* 460 U.S., at 618, n. 8, 103 S.Ct. 1382; alteration in original)." *Id.* The Court declines to revisit this issue and is persuaded that Judge Hall's thorough and searching decision was correct.[3]

---

[3] The Court recognizes that the Plaintiff provided additional allegations regarding the specifics of the Plaintiff's intellectual capabilities in the Amended Complaint and may have done so in light of the Court's prior observation

Judge Hall next determined that the allegations were insufficient to establish that the state had created the danger giving rise to the violation. The Court held: "Doe has not alleged facts sufficient to state a due process claim based on a state-created danger. … Doe is granted leave to replead her due process claim under the state-created danger exception if she can allege facts plausibly supporting an inference that the defendants implicitly communicated to Student A that he would not be punished or interfered with." (Ruling at 19.) The Court also concluded that the allegations were insufficient to establish that the defendants' conduct was egregious or outrageous, a co-requisite to either of the *DeShaney* exceptions. In granting leave to replead, the Court instructed that "Does must plead facts sufficient to plausibly support an inference that the defendants' actions were egregious and outrageous." (Ruling at 23.) The question then is whether she has done so.

**State-Created Danger**

As previously observed, "[T]he boundaries of the state created danger exception to *DeShaney* are not entirely clear, but the exception does require a government defendant to either be a substantial cause of the danger … or at least enhance it in a material way." (Ruling at 14) (Internal quotations and citations omitted). Liability under the stated-created danger theory turns on whether the state conduct contributing to the victim's injury was "affirmative," which can give rise to liability, or "passive," which cannot. *Matican*, 524 F.3d at 157. One way a state can be found to have affirmatively created or enhanced in a material way a victim's danger is where its agents communicate, explicitly or implicitly, to a third-party encouragement or official sanction of private violence. *Okin v. Vill. of Cornwall–On–Hudson Police Dep't*, 577 F.3d 415, 429, 430 (2d Cir. 2009); *see also Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998) (police officers gave

---

that the "Complaint includes no allegations of [Plaintiff's] functional age as a result of her disabilities." (Ruling at 12.) This is not, however, an invitation to replead on this issue. Notwithstanding, in the Court's view, these additional allegations do not alter the legal analysis of whether a "special relationship" between the Defendants and the Plaintiff existed for purposes of the *DeShaney* exception even if the Court were inclined to revisit the issue.

7

a gun to a robbery victim and then transported him to the scene of the suspect's arrest where the victim then shot the suspect); *Dwares*, 985 F.2d at 99 (the state created the danger when police officers communicated to skinheads that "unless they got totally out of control they would not be impeded or arrested").This is the only theory of a state-created danger that the Plaintiff was afforded the opportunity to replead. The other four bases upon which she averred a state-created danger were found to be "the kind of passive conduct that DeShaney and its progeny have held do not state a claim for relief under the state-created danger exception." (Ruling at 16.)

As to the implicit/explicit communication theory for state-created danger, the Court stated: "The Second Circuit has indicated that, in contrast to the special relationship exception, which relies on the relationship between the state and victim, the state-created danger exception 'arises from the relationship between the state and the private assailant.' Pena, 432 F.3d at 109; see also, Lombardi, 485 F.3d at 80 (defining a state-created danger 'through some interaction or relationship with the wrongdoer')." (Ruling at 18.) The Court continued: "the Complaint alleges no interactions or relationships between any of the defendants and Student A." The Court then compared allegations in cases in which courts have found implicit communication and, therefore, a state-created danger, with the allegations in the Original Complaint. (Ruling at 18.) The Court concluded: "The case before this court differs from these cases because, here, there are no allegations of anything similar to the direct contact between the law enforcement officials and the miscreants in Pena and Okin. ... Doe has alleged no facts from which an inference could be drawn that the defendants communicated to Student A an approval of his misconduct, either explicitly or implicitly." (Ruling at 18 – 19.)

Accordingly, the issue for this Court is very narrow: Do the enhanced allegations support an inference that the Defendants explicitly or implicitly communicated to Student A that he would not be interfered with or punished for an assault on the Plaintiff?[4]

Plaintiff alleges in her Amended Complaint that the Defendants (1) "created a dangerous condition in admitting a student with a history of violence to Enfield Public Schools despite his lack of residency in the Town of Enfield"; (2) "allowed" Student A "to remain in a general education setting" without placing restrictions on him; (3) violated its own policy by not monitoring the hallways under construction and removing security cameras in the construction area. The Plaintiff further avers that Clark, specifically, (3) either "willfully abandoned the area by the boys' bathroom" and/or "willfully ignored signs that Student A was bringing Emily to the isolated location"; (4) entered and reentered the boys' bathroom at the time of the assault; and (5) made "contradictory statements" following the assault, regarding his presence at the scene of the assault. These new allegations, when added to the allegations in the Original Complaint, do not plausibly support an inference that the Defendants explicitly or implicitly communicated to Student A that he could assault the Plaintiff without fear of repercussion or interference.

First, the simple act of admitting a known-to-be-violent student to a school cannot be inferred to be tantamount to communicating impunity to that student should he decide to act on his violent impulses. In addition, the new allegations that Clark entered, momentarily left, and then re-entered the boys' bathroom at the time of the assault do not cure the deficiencies identified by Judge Hall. As previously held, "[a] failure to intervene when misconduct takes place, and no more, is not sufficient to amount to a state *created* danger." *Pena*, 432 F.3d at 110 (emphasis in original). Nor did Clark's momentary presence at the scene of the assault, explicitly or implicitly,

---

[4] As she did with the "special relationship" exception, the Plaintiff reargues the state-created danger theories previously rejected by the Court. Indeed, most of the additional allegations set forth above appear to be an attempt to bolster those rejected theories. The Court does not consider these arguments as they have been litigated and decided and are law of the case.

9

communicate to Student A an approval or encouragement of his assaultive conduct.[5] Plaintiff offers no cogent argument to the contrary.

At oral argument, the Plaintiff also argued that as Student A traversed the campus with the Plaintiff, on his way to the construction area, the Defendants should have intervened at any number of places along the way. With each failure to intervene, the Plaintiff argues, the Defendants implicitly communicated to Student A that he would not be stopped. Plaintiff argues that the Defendants thereby emboldened Student A through these implicit communications. This argument, at its core, is premised on the Defendant's failure to recognize the danger to the Plaintiff and to take action to prevent the assault. As discussed in the prior ruling, such allegations do not rise to the level of a substantive due process violation. (Ruling at 14 – 16.) *See also Pena*, 432 F.3d at 110. Recasting them as implicit communications is of no avail.

**Egregious and Outrageous**

To establish a violation of substantive due process rights, the Plaintiff must also demonstrate that the Defendants' actions were "so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience." *Lewis,* 523 U.S. at 847 n. 8; *see also Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) ("The protections of substantive due process are available only against egregious conduct which goes beyond merely offend[ing] some fastidious squeamishness or private sentimentalism and can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience.") (internal quotations and citations omitted).

---

[5] Nor do the allegations regarding Clark's inconsistent statements after the fact alter the Court's analysis. Whatever the Defendants did after the assault is irrelevant to the question of whether, prior to the assault, their conduct created or helped to create the danger to the Plaintiff. Allegations of inconsistent statements do not give rise to an inference that the Defendants communicated, implicitly or explicitly that he could assault the Plaintiff with impunity and without fear of interference from the Defendants.

Although the Supreme Court has recognized that "the measure of what is conscience-shocking is no calibrated yard stick," *Lewis*, 523 U.S. at 847, it has noted that negligently inflicted harm is "categorically beneath the threshold of constitutional due process," and the intentional infliction of injury is the conduct "most likely to rise to the conscience-shocking level." *Id*. at 849. In between those extremes is "deliberate indifference," which can support a due process claim under certain circumstances. *Id*. at 850.

The new allegations in the Amended Complaint, in combination with those in the original complaint, do not plausibly support an inference that the Defendants' conduct was egregious or outrageous. The Defendants' admission of Student A into the school system and placement in a general education setting does not shock the conscience. *See, e.g., HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11–CV–5881 CS, 2012 WL 4477552, at *12 (S.D.N.Y. Sept. 27, 2012) ("Making a bad decision or acting negligently is not the sort of conscience-shocking behavior that violates the Constitution"). Nor do the allegations that Clark entered, momentarily left, and then re-entered the boys' bathroom at the time of the assault, and thereafter made contradictory statements regarding his actions, rise to such a level. *See Smith v. Guilford Bd. of Educ.*, 226 Fed. App'x 58, 62 (2d Cir. 2007) ("Defendants failure to respond to the harassing and bullying to which Jeremy was subjected … while highly unfortunate, does not rise to the level of egregious conduct … so brutal and offensive to human dignity as to shock the conscience."); *Doe v. Torrington*, 179 F.Supp.3d 179, 192 (D. Conn. 2016) ("[A]lthough in some cases Doe alleges that he reported bullying or assaults and Defendants did not take disciplinary action, this does not rise to the level of extreme or outrageous conduct."); *Chambers v. N. Rockland Cent. Sch. Dist.*, 815 F.Supp.2d 753, 770–71 (S.D.N.Y. 2011) ("Here, [the Defendant's] judgment was that Tashana and the other students had been engaged in a verbal back-and-forth that required nothing more than the meetings that were held with Tashana and Unique. That subsequent events arguably proved him wrong does

not establish that he was deliberately indifferent to Tashana's right to bodily integrity, and therefore his decision not to do more to confront Unique and the others falls far short of shocking the conscience.")

Nor do the new allegations support a claim of deliberate indifference. As Judge Hall previously noted:

> [M]erely because the defendants knew or should have known about Student A's history of violence does not mean they had reason to know that he posed an immediate danger to the other students or a specific danger to Doe personally. … For example, the Complaint does not allege that any of the defendants was made aware of the phone call Student A made to Doe the night before the assault. Therefore, the factual allegations in the Complaint do not allege that the defendants acted with deliberate indifference in failing to prevent the assault.

(Ruling at 22.) *See also Farmer v. Brennan*, 511 U.S. 825, 837-838 (1994) (an official acts with deliberate indifference when that official knows of and disregards an excessive risk to a person's health or safety; "an official's failure to alleviate a significant risk that he should have perceived but did not" is insufficient.).

Because the Plaintiff's allegations are insufficient to show a state-created danger or egregious and outrageous conduct, the Plaintiff fails to state a claim for a violation of her substantive due process rights. Count One is therefore dismissed.

It necessarily follows that the Plaintiff cannot maintain a *Monell* claim against the School Board. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."). Accordingly, Count Two is dismissed.

**State Law Claims**

Having dismissed the Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims for the reasons previously articulated by Judge Hall.

> Section 1367(c)(3) permits a district court to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over

which it has original jurisdiction." Id. "Once the district court's discretion is triggered under §1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction." Kolari v. New York- Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation marks and citations omitted). The Second Circuit has instructed that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). In this case, the court has dismissed all of Doe's federal claims in Counts One and Two, and the balance of factors, including judicial economy, convenience, fairness, and comity, see id., point toward declining jurisdiction. As the case is still in the early stages of litigation, significant judicial resources have not yet been expended in briefing and considering these state law claims, which are more appropriately decided by the state court.

(Ruling at 27.) The Amended Complaint is therefore dismissed in its entirety.

For all of the foregoing reasons, the Defendants' renewed motion to dismiss is GRANTED.

Judgement shall enter in favor of the Defendants.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of February 2019.

*/s/ Kari A. Dooley*
Kari A. Dooley
United States District Judge